IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN J. MEECHA,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Commission,

    Defendant.

Case No. 2:17-cv-427
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Objection (ECF No. 19) to the Magistrate Judge's Report and Recommendation. (ECF No. 16.) For the reasons that follow, the Court finds merit in the objections and **REMANDS** this case to the commission for action consistent with this Order.

I.

The history of this case is described in the Magistrate Judge's well-written Report and Recommendation issued on July 27, 2017, and adopted in large part in this Opinion and Order. Instead of repeating those findings, this Court focuses upon the objections raised by the plaintiff, Brian J. Meecha.

The plaintiff contends that the Administration Law Judge ("ALJ") unlawfully weighed and disregarded the opinion of Dr. John J. Tilley and instead credited the opinion of Dr. T. Rodney Swearingen. Both doctors are clinical psychologists, and both interviewed and examined the plaintiff. Neither are treating physicians.

## Dr. John J. Tilley

Dr. Tilley met with the plaintiff on June 9, 2012 and issued a ten-page narrative report. (Record at 375-386.) He interviewed the plaintiff, administered the Minnesota Multiphasic Personality Inventory-2-Restructured Form ("MMPI-2-RF"), and reviewed records from mental health authorities and a pre-sentence investigation report. He examined the plaintiff in connection with his sentencing on charges of aggravated menacing and telephone harassment, both first degree misdemeanors under Ohio Law.

Dr. Tilley reported the following:

**Background Information**
    The defendant endorsed a lengthy history of receiving mental health services, beginning at the age of five. He said that he carries a diagnosis of bipolar disorder and has been treated with a variety of psychiatric medications over the years, including Remeron (an antidepressant), Paxil (an antidepressant), Depakote (a medication with mood-stabilizing properties [that the defendant claims exacerbated his symptoms]), and trazodone (an antidepressant that is often used as a sedative). Presently, he is treated with Seroquel (an antipsychotic medication that has mood-stabilizing qualities), which is prescribed to him by T. Kristine Tsai, M.D., a family physician. The defendant has never been psychiatrically hospitalized.
    The defendant revealed that he was expelled form Gahanna Lincoln High School during his sophomore year for persistent conduct problems. He related that he evidenced a variety of behavioral problems, beginning at a relatively young age, and at one point was diagnosed with oppositional defiant disorder. He obtained his GED in 2000. With respect to higher education, he had completed a variety of courses in business management at Columbus State throughout the years, but has not earned a degree. He was last enrolled in Columbus State in 2008, reportedly.
    ....
    The defendant is unemployed and last worked about five years ago. At that time, he worked at the Chiller. He revealed that he quit working in association with mental health problems.
    ....
**Current Mental Status Examination**
    ....
    Interpersonally, however, the defendant evidenced fairly obvious signs of personality pathology, including narcissism, antisocial attitudes, paranoia, and litigiousness. He seemed immediately annoyed by me and resentful of the evaluation and, early on, he was oppositional, challenging, sometimes accusatory,

and only minimally cooperative. However, as the examination progressed and
rapport was formed, he became significantly less difficult and much more open
and agreeable. Still, even then, he continued to evidence fairly significant
narcissistic and antisocial traits.

....

The defendant seemed inclined to characterize himself as the victim in
various situations and to deflect or minimize his responsibility for negative things
that have happened in his life, like him being recently adjudicated guilty of his
instant offenses. He was quick to blame others for his problems and readily
derogated various entities for their perceived shortcomings. All of this seemed to
be reflective of his personality pathology and signaled to me lack of insight on his
part.

(Record at 377-80.)

He also made this diagnosis:

**Current Diagnosis**
| | |
|---|---|
| Axis I: | Bipolar II Disorder. Currently Controlled With Pharmacotherapy |
| Axis II: | Personality Disorder Not Otherwise Specified With Prominent Narcissistic and Antisocial Features |
| Axis III: | Migraines (per history) |

(Record at 380.)

Using a standard mental functional capacity assessment, Dr. Tilley found:

a. Plaintiff was "extremely limited" in the ability to maintain attention and communication for extended periods.

b. He was "extremely limited" to accept instructions and respond appropriately to criticism from supervisors.

c. He was "markedly limited" in understanding detailed instructions, in the ability to carry out detailed instructions, in working in close proximity to others, in completing a normal workday, in interacting with the public, and in making plans independently of others.

(*See* Record at 384.)

Dr. Tilley concluded by opining that the plaintiff was unemployable. He also noted that "[g]iven the pervasiveness and magnitude of his symptomatology, however, his prognosis is guarded." (Record at 385.)

3

### Dr. T. Rodney Swearingen

Dr. Swearingen met with the plaintiff on July 14, 2011, and thereafter issued a six-page narrative report. (Record at 343-48.) Dr. Swearingen reviewed the file assembled by the Social Security Administration. He did not report the results of any particular testing. He wrote the following:

> **Educational History**
> The claimant stopped attending high school in the 10th grade because of his mood swings. He earned his GED in 2000 and took some college courses. He reportedly did well in college until his mood swings set in, and he liked the freedom of college. The claimant was in special classes for troubled kids. He did not get along at all with the other students, he had a few friends and did not do any dating. The claimant did not get along with the teachers. He reportedly had attendance problems because he was not motivated.
> ....
>
> **Work History**
> The claimant is not currently working and last worked driving the Zamboni at the Columbus Blue Jackets ice rink. He reported no other previous employment. The claimant has never been in the military. He has been out of work for more than a year because of his mood swings and mental health. The claimant has never been fired. His longest duration of employment was 5 years.
> The claimant has had problems getting along with co-workers because of arguments, and he did not like how they looked or what they said. He has not really had problems getting along with supervisors. He reportedly has had problems following instructions in the work setting because he has to be shown how to do something, he reportedly cannot just follow directions. The claimant reportedly is fair at performing repetitive tasks. When asked how he coped with stress and pressure in the work setting, he reported that it bothered him, and he would rage about it. The claimant is reportedly unable to work now due to his mental health, including Bipolar Disorder and social anxiety.
>
> **Behavioral Health History**
> The claimant has never been hospitalized for psychiatric reasons. He reported that he has depression, Bipolar Disorder, Schizophrenia, and Social Anxiety Disorder, all of which he is not taking medication for. He was involved in outpatient counseling since the age of 5, but none currently. The claimant has had lots of psychological testing. He has never attempted suicide. The claimant has bad nerves and has had a nervous breakdown. He has been prescribed medication for his mental health.

**ACTIVITIES OF DAILY LIVING**
The claimant wakes up between 6:00 am and 9:00 am, and then lets the dogs out and might eat. He then walks the dogs, goes to the store, goes to the drive-thru, and sometimes a friend comes over. He does not socialize often. The claimant and his mother do the cleaning. He is able to use the microwave and eat canned food. His mother does the shopping, which he reported that he is unable to do because he would "mess it up". His reading skills are "good", writing skills "depend on my mood", his spelling skills are "average", and his arithmetic skills are "average". When asked if there was anything that happened or changed in the last year that continues to bother him, the claimant responded that nothing has happened or changed which is bothering him.

(Record at 344-45.)

Dr. Swearingen made the following diagnosis:

**DSM-IV MULTIAXIAL CLASSIFICATION**

| | |
|---|---|
| Axis I | 296.80 Bipolar Disorder, NOS |
| | 311 Depressive Disorder, NOW |
| | 300.23 Social Phobia |
| Axis II | V71.09 No Diagnosis |
| Axis III | Headaches |
| Axis IV | Psychosocial Stressor: Occupational |
| Axis V | GAF = 50 |

(Record at 347.)

He also included the following opinion:

The claimant did not require redirection to the task at hand during the evaluation, and his concentration was good and persistence was very good. His pace of task was average. He has been fair at performing repetitive tasks. He is expected to have the ability to perform the simple and multi-step tasks.

(Record at 348.)

The ALJ adopted this last conclusion of Dr. Swearingen. (Record at 32-33.) He discounted the opinion of Dr. Tilley in finding:

I give little weight to the opinion of Dr. Tilley, an examining source for the local social service agency who opined on July 24, 2012 that the clamant was unemployable for 12 months or more due to marked and extreme limitations in several areas of mental function (Exhibit 5F). Dr. Tilley's opinion was rendered well past the expiration of date of last insured and does not relate back to the claimant's mental functioning prior to the expiration of date of last insured.

5

> Moreover, Dr. Tilley's opinion is inconsistent with his letter to the court on July 1, 2012 in which he indicated that the claimant's bipolar disorder is controlled with medication and the clamant is amendable to treatment (Exhibit 4f, page 1). Most importantly, Dr. Tilley's opinion is inconsistent with the evidence prior to the expiration of the date of last insured that includes Dr. Swearingen's mental status evaluation, Dr. Tsai' treatment notes and mental status findings and the claimant's activities of daily living (Exhibits 1F, 3E & 7F).

(Record at 33.)

## II.

This Court reviews the ALJ's decision to ensure (1) whether the findings are supported by substantial evidence; and (2) whether the ALJ utilized and applied the correct legal standard. *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007). If the decision is supported by substantial evidence and is in accordance with the law, then the decision of the ALJ must be affirmed. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Plaintiff raises two objections as to the conclusions reached by Dr. Tilley. First, Plaintiff contends that the doctor's narrative report does not conflict with a letter he wrote to the state court on July 1, 2012, indicating there the plaintiff's mental health conditions are "amendable to treatment." Plaintiff contends that such a statement was made to a judge in a pending criminal case and is limited to the plaintiff's ability to abide by the law, not engage in gainful work activity.

At best, in the Court's view, such a statement is ambiguous. The logical reading of the words is a statement that treatment can be effective but that makes no reference at all to employment. "Amendable to treatment" can mean a limiting of pain, a redirection of symptoms, or a limitation of mood swings. It says nothing as to abilities or capacities to work.

Second, the ALJ noted that Dr. Tilley's report of July 1, 2012 was "well past the expiration date of last insured." (Record at 33.) This would mean that the plaintiff's condition

6

could have been markedly different before his last date of insurance. The record belies such a conclusion, as found by the Magistrate Judge in this case.

The last date the plaintiff was insured was March 31, 2012, only three months prior to Dr. Tilley's report. Both Dr. Tilley and Dr. Swearingen describe the plaintiff's long struggle with mental illness, dating back to, at best high school, meaning a period greater than fifteen years. There is no indication that the plaintiff's condition worsened between March 31, 2012, the last date he was insured, and July 1, 2012, the date of Dr. Tilley's letter.

The Court also notes two other matters relevant to the decision of the ALJ. Dr. Swearingen assigned the plaintiff a Global Assessment of Functioning ("GAF") score of 50, which, under the former DSM-IV, reflects "serious symptoms ... OR serious impairment in social, occupational or school functioning [(e.g. no friends, unable to keep a job.)]" *Pounds v. Astrue*, 772 F.Supp.2d 713, 724-25 (W.D. Pa. 2011) ("[t]he failure to acknowledge a GAF score in and of itself can result in remand, in particular when the GAF score indicates serious symptoms or impairments in social or occupational functioning." (quoting *Holmes v. Barnhart*, CA No. 04-5765, 2007 WL 951637, *11, 2007 U.S. Dist. LEXIS 21769, *31-*32 (E.D. Pa. March 27, 2007))).

The Court notes that the current DSM-V has jettisoned the whole GAF scheme, albeit after Dr. Swearingen's report. As discussed in length in *Golden v. Shulkin*, 29 Vet.App. 221, 224 (2018), GAF scores are another factor, not always determinative, in disability assessment. Neither the ALJ nor Dr. Swearingen analyzed Dr. Swearingen's conclusion that while the plaintiff could perform simple and multi-step tasks, the plaintiff's GAF score demonstrates serious symptoms that could render a patient unable to hold a job. To be sure, the two

7

conclusions may not be inconsistent. To so conclude, however, requires an explanation which is nowhere in the record.

In the end, the ALS adopted the findings of Dr. Swearingen in determining the plaintiff's residual functional capacity. Had the ALJ adopted the limitations described by Dr. Tilley, the plaintiff would be deemed disabled and entitled to benefits.

The Court finds that the ALJ improperly weighed the conflicting opinions of Dr. Tilley and Dr. Swearingen, failed to consider Dr. Swearingen's determination of a GAF score of 50, and improperly concluded that a July 1, 2012 opinion was not probative of a disability prior to March 31, 2012.

### III.

Based upon the foregoing, the decision of the Social Security Commission is **REVERSED.** This case is remanded pursuant to 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

9-27-2018
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**